USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 15, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                  :

ANDREW BLAKE,                      :

                   Petitioner,     :         15-cv-10194 (KBF)

                                   :

         -v-                   :      OPINION & ORDER

                                   :

STATE OF NEW YORK,            :

                                   :

                 Respondent.    :

                                   :
------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

     On December 30, 2015, petitioner Andrew Blake filed a pro se petition pursuant to 28 U.S.C. § 2254(d)(1). (ECF No. 1.) He filed an amended petition on April 12, 2016 ("Amended Petition"), which is the operative petition. (ECF No. 11.) Petitioner seeks relief from the April 7, 2009, judgment of the Supreme Court of New York County convicting him, after a jury trial, of three counts of attempted murder in the second degree (N.Y. Penal Law §§ 110.00, 125.25[1]), two counts of assault in the first degree (N.Y. Penal Law § 120.10[1]), one count of assault in the second degree (N.Y. Penal Law § 120.05[1]), two counts of criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03[1][b], 265.03[3]), one count of reckless endangerment in the first degree (N.Y. Penal Law § 120.25), and one count of bribery in the second degree (N.Y. Penal Law. § 200.03). Petitioner was sentenced to prison for a twenty-five years with five years of post-release supervision for each attempted-murder and first-degree assault conviction; to seven

years for the second-degree assault conviction; to fifteen years for each weapon-possession conviction; to two-and-a-third to seven years for the reckless endangerment conviction; and three to nine years for the bribery conviction. All sentences are to run concurrently.

On April 2, 2013, the New York State Appellate Division, First Department, affirmed petitioner's conviction on all counts. <u>People v. Blake</u>, 963 N.Y.S.2d 33 (N.Y. App. Div. 1st Dep't 2013). On October 21, 2014, the New York Court of Appeals unanimously affirmed. <u>People v. Blake</u>, 996 N.Y.S.2d 585 (N.Y. 2014). Petitioner is currently incarcerated in Delaware state prison on a separate conviction and has yet to begin serving his New York sentence.

The Amended Petition challenges petitioner's conviction on the sole ground that he received ineffective assistance of counsel at trial. Petitioner argues that his trial counsel was constitutionally deficient for failing to request an adverse inference charge to the jury regarding the government's failure to preserve footage from one of the cameras on the premises where the relevant events occurred.

For the reasons set forth below, Blake's petition is DENIED.

I.   FACTUAL BACKGROUND

Petitioner's convictions arose from a shooting that occurred on New Year's Eve in 2006. On the evening of December 31, 2006, petitioner was visiting the Grant Houses in Harlem. (Trial Transcript ("Tr.") at 714, ECF No 25.) At about 10:00 p.m., one of the shooting victims, Charles Robinson, encountered an individual named Jamel Lunnon outside the Grant Houses, and Lunnon punched

Robinson in the face, apparently in response to being told earlier that Robinson raped Lunnon's sister. (Tr. 39-43, 380.) Robinson left and went to the nearby home of his brother, Rory Robinson. (Tr. 47.) Upon learning of the altercation, Rory left to confront Lunnon at the Grant Houses, where he encountered Lunnon and several of Lunnon's companions. (Tr. 386-88.) After a discussion but no physical confrontation, Rory and Charles Robinson went back to Rory's apartment. (Tr. 388-89.)

After midnight, Rory, Charles, and a friend named Paul Melvin headed back toward the Grant Houses. (Tr. 53-55, 237.) They encountered Melvin's cousin, Jermaine Jenkins, who joined them. (Tr. 236-38.) As they approached the Grant Houses they saw petitioner and petitioner's friend Wonder Williams, who Melvin and Jenkins approached in order to "confront" them. (Tr. 238, 391-93.)

At this point, petitioner's account diverges from that of Melvin, Jenkins, and the Robinson brothers. Rory Robinson testified that he walked up to petitioner and Williams and asked which of them had punched Charles, and that Rory then punched Williams in the face when they did not answer. (Tr. 392-93.) Rory testified that both men fell and that when they got up, Williams passed a gun to petitioner, who put the gun into his waistband before walking away down the street. (Tr. 394-95.) Rory Robinson testified that petitioner and Williams then turned around and started to walk back toward Rory and his companions, and that petitioner still had the gun in his waistband. (Tr. 396.) Rory testified that petitioner then pulled out the gun and started shooting. (T. 397-98.) Melvin,

3

Charles Robinson, and a bystander named Carl Jones were shot in the left buttocks and left hand, through the chest, and in the right leg, respectively.  (T. 528, 546, 941-42.)

Petitioner initially denied shooting anyone, though he later told detectives that he shot the victims in self-defense.  (Tr. 715, 718, 845-61.)  Petitioner told detectives that when he walked out of the Grant Houses with Williams, he saw a group of men "waiting on [him]" with razors, that the men were "pulling out razors" and "coming at [him]" with the razors, and that he thought they were "going to kill [him]."  (Tr, 853-54, 1067.)  Video footage shows, inter alia, that Rory Robinson's outstretched hands were empty immediately before the shooting.  (Respondent's Supplemental Appendix ("S.A.") at 63, 93, ECF No. 25-5.)

The following day, NYPD detectives apprehended petitioner at his apartment in Delaware, where detectives found the gun used in the shooting submerged in a toilet tank.  (Tr. 883-94.)  In his post-arrest interview, petitioner initially denied participating in the shooting and said that the gun wouldn't have his finger prints on it after being in the toilet tank.  (Tr. 715-16.)  After being presented with still shots from video footage at the Grant Houses, petitioner said that he committed the shooting but stated that he did so in self-defense.  (Tr. 845-61.)  At the end of the interview, petitioner offered the detectives "$10,000 each to get rid of the evidence from New York."  (Tr. 723.)

During the investigation of the shooting, the New York Police Department ("NYPD") failed to secure and preserve footage from a rotating NYPD surveillance

camera that videotaped part of the street where the shooting took place.  (Tr. 509-13.)  Detectives investigating the shooting admitted that they did not search for or preserve footage from that camera, and that the relevant footage was written over and lost as a result.  (Tr. 754-55, 483-84.)  The NYPD preserved video footage from several other cameras in the area at the relevant time.  (Tr. 115-20, 206-12.)

Petitioner was convicted by a jury on April 7, 2009.  He is currently serving prison time on a separate conviction in Delaware, and will begin his New York sentence after completion of his Delaware sentence.

II.    PROCEDURAL HISTORY

Petitioner appealed his conviction to the Appellate Division, arguing, <u>inter alia</u>, that his trial counsel was constitutionally ineffective for not requesting an instruction to the jury that it could draw an unfavorable inference for the prosecution due to the NYPD's failure to retrieve and preserve the video footage from the camera at the Grant Houses.  The Appellate Division rejected this argument on the merits, explaining that "[c]ounsel may have had strategic reasons" for not requesting the instruction, and that "regardless of whether counsel should have requested the instruction," there was "no reasonable possibility that the lack of an adverse inference charge deprived defendant of a fair trial or affected the outcome."  <u>People v. Blake</u>, 963 N.Y.S.2d at 35 (citing <u>Strickland v. Washington</u>, 466 U.S. 669, 694 (1984)).

Petitioner was granted permission to appeal to the New York Court of Appeals, where he reiterated his argument that his trial counsel was

constitutionally ineffective for failing to request the adverse inference jury instruction.  The Court of Appeals also rejected this argument, affirming petitioner's conviction unanimously.  People v. Blake, 996 N.Y.S.2d at 587.  The Court of Appeals held that even if the failure to request the instruction had been error, "that lone error was not in the context of this prosecution sufficiently egregious and prejudicial to constitute" constitutionally ineffective assistance of counsel.  Id.  The court explained that "[t]he jury was well aware that, as defense counsel had emphasized, the police had failed to preserve" the video, "but nonetheless rejected the argument . . . that the tape would have proved that defendant only fired his gun to avoid being shredded by his assailants' razors."  Id. at 588.  Moreover, "the video evidence that was present at trial depicted one of defendant's adversaries a moment before the shootings with his arms extended at his sides, and his palms open, and there was no proof that razors or other weapons were found on or near the victims[.]"  Id.  (emphasis in original) Given the other evidence—"that one of the defendants' victims had been shot in the back while fleeing," that the defendant "fle[d] the jurisdiction and attempt[ed] to secrete evidence linking him to the shootings," and "that he attempted to bribe the arresting officers to destroy videotapes" in contradiction of defendants' claim that if there were more video evidence it would exonerate him—there was not "even a reasonable possibility, much less a reasonable probability (see Strickland, 446 U.S. at 694, 104 S. Ct. 2052) that the jury, if offered the opportunity, would have elected

to draw an inference adverse to the prosecution as to what the missing video would have shown." Id.

Petitioner timely filed this petition under 28 U.S.C. § 2254 on December 30, 2015, presenting the claim that his trial counsel's failure to request the jury instruction constituted ineffective assistance of counsel. (ECF No. 1.) He sought a stay of the Court's review of this petition while he pursued a different, unexhausted ineffective-assistance of counsel claim in state proceedings. (ECF No. 4.) The Court denied this request, and struck from the Amended Petition all references to the unexhausted claim. (ECF No. 24.) Petitioner's only claim before the Court is that his Sixth Amendment right to effective assistance of counsel was violated when his trial counsel did not ask the trial court to instruct jury members that they could draw the inference that, if the lost videotape has been preserved, it would have supported defendant's claim that he shot the victims in self-defense.

## III.   PRINCIPLES OF LAW

### A.   Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires that in order for a petitioner to prevail on a petition for habeas corpus, he must demonstrate that the state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court" 28 U.S.C. § 2254(d)(l). A state court's decision is contrary to clearly established federal law if "either (1) [] the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court, or (2) []

7

when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)).  A state-court decision is based on an unreasonable application of clearly established federal law if the state court "unreasonably applied" federal legal principles "to the facts of the case before it . . . involv[ing] some increment of incorrectness beyond error." Id. at 133 (internal quotation marks and citation omitted).

State prisoners seeking federal habeas relief face a high burden, and a district court must give a state-court decision due deference.  See Harrington v. Richter, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be."); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (noting that § 2254's "highly deferential" standard "demands that state-court decisions be given the benefit of the doubt").  Habeas will not be granted "merely because there is a reasonable possibility that trial error contributed to the verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).

B.  INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on an ineffective assistance of counsel claim, petitioner must meet two requirements. Strickland v. Washington, 466 U.S. 668, 686 (1984); Chhabra v. United States, 720 F.3d 395, 406 (2d Cir. 2013).  First, petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms." Strickland, 466 U.S. at 688.  "Judicial

8

scrutiny of counsel's performance must be highly deferential," with a strong presumption that "the challenged action 'might be considered sound trial strategy'" in light of the particular facts of the case and the time of counsel's conduct. Strickland, 466 U.S. at 689.

Second, petitioner must prove that the errors were so prejudicial that they deprived him of a fair trial. Id. at 686. Error, even if "professionally unreasonable, does not warrant setting aside a judgment if the error had no effect" on the outcome. Id. at 691. Moreover, it is "not enough to show that the errors had some conceivable effect on the outcome." Id. at 693. Rather, petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

IV.   DISCUSSION

Petitioner's sole claim in his Amended Petition is that his trial counsel was constitutionally ineffective for failing to request a jury instruction regarding an unfavorable inference that could be drawn from the fact of the missing videotape. In denying this claim below, the state court applied the proper Strickland standard for ineffective assistance of counsel as determined by the Supreme Court of the United States: The Court of Appeals examined both whether petitioner's trial counsel fell below an objective standard of reasonableness (People v. Blake, 996 N.Y.S.2d at 587 (citing Strickland, 566 U.S. at 688)) and whether counsel's allegedly deficient performance resulted in prejudice to the defendant (Id. at 588 (citing Strickland, 466 U.S. at 694)). After correctly applying the relevant constitutional

standard, both the Appellate Division and the Court of Appeals concluded that, regardless of whether trial counsel's failure to request the instruction fell below an objective standard of reasonableness, the evidence against petitioner's claim of self-defense was so strong that he could not show prejudice from the absence of the instruction.

Under the "doubly deferential" standard set by AEDPA for ineffective assistance of counsel claims, the Court concludes that the Court of Appeals applied the correct legal standard for ineffective assistance of counsel, and applied it reasonably. Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) ("When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is 'doubly deferential.'" (quoting Cullen v. Pinholster, 653 U.S. 170, 190 (2011)).

Even if this petition were before the Court on de novo review, the Court would agree with the Court of Appeals that, given the voluminous evidence—including video evidence—that petitioner was not acting in self-defense, there is no reasonable probability that a jury would have drawn the negative inference for the prosecution if petitioner's trial counsel had requested the instruction. See, e.g., S.A. at 63, 93 (showing Rory Robinson with empty hands); (Tr. 723) (petitioner bribing detectives to destroy tapes that he now claims would exonerate him). This Court agrees with the Court of Appeals that "[o]n this record, even a reasonable possibility, much less a reasonable probability that the jury, if offered the opportunity, would have elected to draw an inference adverse to the prosecution as to what the missing video would have shown." People v. Blake, 996 N.Y.S.2d at 588

(citing <u>Strickland</u>, 446 U.S. at 694).  Moreover, as the Court of Appeals noted, petitioner's trial counsel repeatedly made the argument before the jury that if they missing video tape had been available, it would have shown "the aggressors going after [petitioner]" and "'a terrified [petitioner] trying to get away.'"  (Tr. 1048); <u>see also</u> <u>People v. Blake</u>, 996 N.Y.S.2d at 586.  Therefore, petitioner cannot show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S at 694.

V.     CONCLUSION

For the reasons set forth above, the petition is DENIED.

Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore <u>in forma pauperis</u> status is denied for the purpose of any appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to dismiss the pending petition at ECF No. 11

and to terminate this action.

        SO ORDERED.

Dated:        New York, New York
                   December 15, 2016

cc:
Andrew Blake
SBI # 287074
James T. Vaughn Correctional Facility
1181 Paddock Road
Smyrna, DE 19977

                             _____
                              KATHERINE B. FORREST
                          United States District Judge